[Cite as *Ceculski v. Clatterbuck*, 2021-Ohio-1311.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TINA CECULSKI, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| DOUGLAS CLATTERBUCK, | : | Case No. 2020 CA 00033 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Fairfield County
                                 Court of Common Pleas, Case No.
                                 20CV00195

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                April 13, 2021

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

BRUCE M. BROYLERS                          D. KEVIN COLMAN
134 North Columbus Street                  Farmer, Cline & Campbell, PLLC
Lancaster, Ohio 43130                      453 Suncrest Towne Center
                                           Suite 300
                                           Morgantown, WV 26505

*Baldwin, J.*

{¶1} Appellant, Tina Ceculski, appeals the decision of the Fairfield County Court of Common Pleas granting appellee Douglas Clatterbuck's motion to dismiss for lack of personal jurisdiction and for failure to state a claim.

### STATEMENT OF FACTS AND THE CASE

{¶2} Tina Ceculski's claim arises out of the alleged fraud in the administration of the estate of the parties' mother, Rosena Lee Clatterbuck, in a West Virginia Probate Court. Douglas Clatterbuck, the executor of the estate, was then, and remains, a resident of the state of West Virginia. Ceculski filed two complaints alleging she suffered harm caused by Clatterbuck, but the trial court has dismissed appellant's claims in both cases for lack of personal jurisdiction.

{¶3} Rosena Lee Clatterbuck, resident of West Virginia and mother of Tina Ceculski and Douglas Clatterbuck, opened an individual retirement account in 1995 and named Ceculski as a beneficiary. She passed away on June 15, 2010 and the parties agree that Douglas Clatterbuck was appointed executor of the estate of Rosena. Ceculski claimed she did not know that she was the named beneficiary of the IRA until she was presented with a check for the proceeds of the account by Clatterbuck on May 29, 2013.

{¶4} Ceculski was of unsound mind from December 2012 until June 2016 and was unable to attend to her own legal concerns, experiencing only intermittent periods of lucidity. Even before December 2012, Ceculski was characterized as "out of it" (October 2011) and suffered a suspected "mental breakdown" and was confined pursuant to an Order of Detention by the Franklin County Probate Court. (February 2012).

{¶5} Clatterbuck continued to administer Rosena's estate while Ceculski was struggling with her mental health. In March, 2012, after Ceculski's mental breakdown and order of confinement, Prudential delivered a letter to decedent Rosena, requiring a signature to avoid abandonment of the IRA. Clatterbuck, as the named representative for the IRA and executor of the estate, signed that letter and directed the holder of the IRA to reinvest the funds. The value of the funds increased by more than $30,000.00 between the death of Rosena and the distribution of the funds in 2013.

{¶6} The parties agree that IRA funds were a nonprobate asset subject to W.Va. Code § 11-11-35 which obligates the personal representative of the decedent to "make the nonprobate inventory form of an estate available for inspection by or disclosure to * * * " an heir at law or beneficiary of the estate, which would include Ceculski. Ceculski does not assert that she requested access to the inventory form, but she does complain that Clatterbuck did not provide her a copy and did not file it with the clerk's office. Clatterbuck contends that he did file the nonprobate inventory as required.

{¶7} On September 18, 2019, Ceculski filed her first complaint with the Fairfield County Court of Common Pleas naming appellee and William Clatterbuck as defendants. The trial court dismissed the complaint against William Clatterbuck as being without personal jurisdiction. The complaint was never served on Douglas Clatterbuck, but an amended complaint, filed by Ceculski on December 19, 2019, naming only Douglas Clatterbuck as a defendant, was served on him. The complaint was dismissed for lack of personal jurisdiction on March 13, 2020. Ceculski served Clatterbuck's counsel with a notice of appeal, but did not file the notice with the court. Instead, the complaint now before us was filed.

**{¶8}** Clatterbuck moved to dismiss the complaint pursuant to Civ.R. 12(B)(2), 4.3(A), 9(B) and R.C. 2307.382(A) on August 28, 2020, asserting that the court should not exercise personal jurisdiction over him in this case. In the alternative, if it was to exercise jurisdiction, he argued the case should be dismissed for failure to fulfill the requirement of Civ.R. 9(B) that allegations of fraud must be stated with particularity. Ceculski responded by contending that the complaint contained sufficient allegations to satisfy the two-part test for long-arm jurisdiction and that the allegations of fraud were detailed. Clatterbuck replied that appellant's claims relied upon a finding that W.Va. § 11-11-35 imposed an obligation to disclose the nonprobate inventory to her when, in fact, it only obligated him to make it available.

**{¶9}** The trial court granted the motion to dismiss, finding no significant differences between the current case and the prior case that had been dismissed for lack of jurisdiction:

> The allegations in the new complaint are not themselves new. Likewise, the arguments raised in the Defendant's Motion to Dismiss presently before the Court are nearly identical to those raised by the same Defendant in his Motion to Dismiss in 19CV584; namely, that this Court lacked personal jurisdiction over the Defendant, and that the Plaintiff failed to state a claim of fraud with sufficient particularity. This Court granted that motion on personal jurisdiction grounds and declined to rule on the sufficiency of the pleadings. Entry & Order, filed Mar. 13, 2020.

{¶10} The trial court acknowledged that Ceculski added new allegations to the complaint, presumably to bolster her argument in favor of personal jurisdiction. Ceculski alleged Clatterbuck had been issued a real estate license and was a statutory agent for a West Virginia Corporation which had listed homes for sale in Ohio in April 2020. The Ohio Department of Commerce had listed Clatterbuck's "public address" as Martins Ferry, Ohio and the address for Clatterbuck as statutory agent was listed as Bridgeport, Ohio. Ceculski also noted that Clatterbuck held an Ohio Insurance agent license.

{¶11} The trial court was not "persuaded that these additional intermittent contacts with the State of Ohio establish personal jurisdiction over the Defendant. Therefore, the Court finds that the Defendant is not subject to personal jurisdiction in this Court."

{¶12} The trial court also dismissed the claim on its merits, finding the allegations of fraud were not stated with sufficient particularity.

{¶13} Appellant filed a notice of appeal and submitted one assignment of error:

{¶14} "I. THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT OF APPELLANT FOR LACK OF PERSONAL JURISDICTION."

## STANDARD OF REVIEW

{¶15} A trial court's determination of whether personal jurisdiction over a party exists is a question of law, and appellate courts review questions of law under a de novo standard of review. *Information Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192 (1st Dist.).

{¶16} Generally, a court must undertake a two-step process in determining whether a state court has personal jurisdiction over a non-resident defendant. *Fraley v. Estate of Oeding,* 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 12. The court must

first consider whether Ohio's long-arm statute, R.C. 2307.382, or the civil rules confer jurisdiction. *Id.* If they do, the court must then consider whether asserting jurisdiction over the non-resident defendant would deprive the defendant of the right to due process under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution. *Id.*

**{¶17}** The Due Process Clause of the Fourteenth Amendment mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state such that summoning the party to Ohio would not offend the " 'traditional notions of fair play and substantial justice.' "*Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945). In determining whether a defendant has the necessary minimum contacts with the forum, a court should consider " 'the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state [,] and the convenience of the parties.'" *Natl. City Bank v. Yevu*, 178 Ohio App.3d 382, 2008–Ohio–4715, 898 N.E.2d 52, ¶ 16 (8th Dist.), quoting *M & W Contrs., Inc. v. Arch Mineral Corp.* 335 F.Supp. 972 (S.D.Ohio 1971). The constitutional touchstone is whether the non-resident defendant purposely established contacts in the forum state such that the defendant should reasonably anticipate being hauled into court in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L. Ed.2d 528 (1985), citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L. Ed.2d 490 (1980).

**{¶18}** The trial court did not conduct an evidentiary hearing, so it was obligated to "view allegations in the pleadings and documentary evidence in the light most favorable to the non-moving party" and "* * * resolve all reasonable competing inferences in favor of such non-moving party." *Giachetti v. Holmes*, 14 Ohio App.3d 306, 307, 471 N.E.2d

165, 167 (8th Dist.1984). In the absence of an evidentiary hearing, a plaintiff "need only make a prima facie showing of jurisdiction to withstand the motion to dismiss." *Id. Accord Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994) (Court was required to view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor.)

## ANALYSIS

**{¶19}** Ceculski contends, in her sole assignment of error, that the trial court erred by dismissing the complaint for lack of personal jurisdiction. She claims that the "additional factual allegations" establish minimal contacts and that the requirements of R.C. 2307.382(A)(3) and (6) were satisfied when Clatterbuck failed to disclose information regarding the IRA, a nonprobate asset, to her.

**{¶20}** Ceculski's appeal is dependent upon a finding that W.Va. Code § 11-11-35 imposes a duty on Clatterbuck to inform her of the status of nonprobate assets. The relevant section of that statute states:

(b) Notwithstanding the provisions of article ten of this chapter, the personal

representative of the decedent shall make the nonprobate inventory form of

an estate available for inspection by or disclosure to:

(1)     The personal representative of the estate;

(2)     Any heir at law, beneficiary under the will of the decedent, a creditor

who has timely filed a claim against the estate of the decedent with the

fiduciary commissioner or fiduciary supervisor, or any party who has filed a

civil action in any court of competent jurisdiction in which any asset of the decedent is in issue; or

(3)     The attorney for the estate or its personal representative or the attorney-in-fact duly authorized by any of the persons described in subdivision (1) or (2) of this subsection.

**{¶21}** First, we note that Ceculski has alleged that Clatterbuck is the executor of the estate of Rosena Lee Clatterbuck, but has not alleged that he is the personal representative of the decedent, the entity upon which the duty is imposed. The personal representative of the decedent is obligated to make the relevant form available for inspection or disclosure to the personal representative of the estate, so the representative of the estate and the representative of the decedent appear to be by definition, different persons.   Ceculski's complaint fails to address this issue. The West Virginia Code describes "personal representative" as the "personal representative of the estate of the decedent, appointed, qualified and acting within this state" and includes within the definition executor and administrator, but does not include "personal representative of the decedent" within that definition. W.Va. Code § 11-11-2(b)(16)  Applying those definitions to the allegations in the complaint, Ceculski has alleged that Clatterbuck is executor or personal representative of the estate, not the personal representative of the decedent, and therefor arguably not subject to the duty.

**{¶22}** Regardless of whether Clatterbuck is the personal representative of the estate or the decedent, Ceculski's interpretation of the duty imposed by W.Va. § 11-11-35 is not supported by the language of the Code.  The personal representative of the decedent is obligated to "make the nonprobate inventory form of an estate available for

inspection."   This section of the code imposes no requirement that the personal representative of the decedent deliver a copy of the form to Ceculski or disclose the contents, but only that the form be made available for inspection.

**{¶23}** Ceculski has not alleged that she requested that Clatterbuck disclose the form or that he provide her a copy, instead relying upon her conclusion that the statute imposes a duty to distribute a copy to heirs, including her.  As noted above, the statute requires only that the form be made available for inspection and imposes no positive duty to distribute the form.  Ceculski notes that Clatterbuck was also required to file the form with the clerk of the county commission or the fiduciary supervisor in West Virginia and, while that is true, the filing of that document would not have benefited her as West Virginia Code prohibits disclosure by any person working in those offices. W.Va. Code § 11-11-7(d).

**{¶24}** Consequently, we find that Ceculski has failed to establish a prima facie claim that Clatterbuck committed "tortious injury by an act or omission in this state" or that he caused "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state" R.C. 2307.382(A)(3),(6) and that the trial court correctly concluded it did not have jurisdiction.

**{¶25}** Had we found a prima facie case of personal jurisdiction, appellant's claim would have failed under the due process analysis.  Ceculski points to one visit to Ohio, licensing as an insurance agent, licensing as a realtor and a filing in which he is listed as a statutory agent of a realty company that has homes listed for sale.  Ceculski has not alleged that Clatterbuck has transacted any business in the state of Ohio as a realtor or

an insurance agent.  After reviewing the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state, the convenience of the parties and the fact that the administration of the estate of Rosena Lee Clatterbuck was pending in a West Virginia court, we would hold that Ceculski has not established minimum contacts for the exercise of personal jurisdiction by the trial court in Fairfield County.

{¶26} We find the balance of the issues presented by Ceculski under the first assignment of error, including the issues regarding the allegations of fraud, moot.

{¶27} The assignment of error is denied and the decision of the Fairfield County Court of Common Pleas declining to assert personal jurisdiction over appellee is affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Delaney, J. concur.